# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**REMO HARRISON DANIELS,**

    Plaintiff,

    v.                                                                     Case No. 17-CV-680

**BRIAN FOSTER,**
**SARAH COOPER,**
**TONY MELI,**
**NACHY WHITE,**
**CHRYSTAL MARCHANT,**
**CARLYN M. VOIGT,**
**ANNE YORK,**
**CO WOOD,**
**CO DERTER**
**CO CLERK**
**DR. SYERD**
**ANDREW KESSLER**
**DR. TORRIA M. VAN BUREN and**
**DR. STEVEN J. SCHMIDT,**

    Defendants.

## SCREENING ORDER

Remo Daniels, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. § 1983. On September 11, 2017, I issued a report and recommendation regarding the screening of his complaint. (Docket # 31.) The case was then transferred to the Honorable Pamela Pepper to rule on the report and recommendation. In the interim, the Wisconsin Department of Justice and this court have entered into a Memorandum of Understanding that gives limited consent to magistrate judges to screen prisoner complaints. I therefore have jurisdiction for purposes of screening

the complaint. The case has been transferred back to me, and I will withdraw the report and recommendation and issue a screening order. For the reasons stated below, Daniels may proceed against all defendants on his Eighth Amendment claims; however, I will not permit Daniels to proceed against Dr. Syerd for retaliation. Additionally, I will deny Daniels' motion to prevent spoliation, his motion to appoint counsel, his motion for emergency relief, and his motion for a protective order. I will order the defendants to respond to Daniels' motion for a preliminary injunction and temporary restraining order.

*Screening of Plaintiff's Amended Complaint*

Federal law requires that I screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550

U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I will give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

*Allegations in the Complaint*

On January 12, 2017, defendant Dr. Syerd prescribed "crushed" medication to Daniels because of his history with overdosing. (Compl. at 2, Docket # 1.) On December 5, 2016 and January 15, 2017, Daniels was placed in the Waupun Hospital emergency room after an overdose on medication. (*Id.*) On January 19, 2017, as defendant Anne York was

administering medication, she informed Daniels that he had been taken off crushed medication and been given "whole" pills. (*Id.*) Daniels alleges that Dr. Syerd put him on whole pills again in retaliation for his overdose on January 15, 2017. (*Id.*) As a result of receiving whole pills, Daniels was able to "save up more pills" and then overdosed on acetaminophen on February 7, 2017 in the presence of defendant Dr. Torria Van Buren. (*Id.* at 3.) Daniels alleges that the other defendants told Dr. Van Buren that they knew he had a large amount of pills, but did not care. (*Id.*)

Further, Daniels wrote to the unit managers defendants Nachy White and Chrystal Marchant informing them that the security officers were not properly handcuffing him to the door for his medication restriction because "they didn't care" if he overdosed. (*Id.*) Daniels asserts that he was allowed to store a supply of pills. (*Id.*) On February 17, 2017, Daniels was caught with the pills he planned to overdose with, but it is not clear from the complaint what happened after. (*Id.* at 4.) On March 11, 2017, Daniels informed an officer that he planned to overdose using the pills he saved. (*Id.*) Around 12:00 p.m. that day, an inmate told Sgt. Voigt that Daniels planned on overdosing. (*Id.*) Around 12:35 p.m., Daniels stopped defendant Officer Clerk and told him that his stomach was hurting because he ingested a "box of pills" that was in his cell. (*Id.*) Officer Clerk informed Sgt. Voight of the situation. (*Id.*) After speaking with Sgt. Voight, Daniels was sent to Waupun Hospital's Emergency Room before being sent to the Intensive Care Unit. (*Id.*)

Daniels alleges that the defendants have taken preventative action to prevent other prisoners from overdosing on medication, but did not take the same action for him. (*Id.*) Daniels asserts that the defendants were deliberately indifferent to his needs, failed to

intervene regarding his medical care, and have not provided the correct medical treatment. (*Id*. at 5-6.)

*Analysis*

1. *Deliberate Indifference to Medical Care*

Prison officials violate the Eighth Amendment's cruel and unusual punishment proscription when they display "deliberate indifference to serious medical needs of prisoners." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2009) (internal citation omitted). The focus is not the objective seriousness of the need, but whether the defendants acted with deliberate indifference, which is a subjective standard. *Id*. (citing *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002)). "To be deliberately indifferent, the defendants must have acted with a 'sufficiently culpable state of mind.'" *Id*. (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The defendants must have knowledge about the plaintiff's serious medical need and must "consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)).

The Seventh Circuit recognizes "the right to be free from deliberate indifference to suicide" *Cavalieri v. Shepard*, 321 F.3d 616, 623 (7th Cir. 2003) (citing *Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992)), and has likewise upheld liability where prison staff ignored an inmate's visible symptoms of serious illness. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 302 (7th Cir. 2010). Deliberate indifference to a risk of suicide is present when an official is subjectively "aware of the significant likelihood that an inmate may imminently seek to take his own life" but "fail[s] to take reasonable steps to prevent the inmate from performing the act." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (citing *Estate of*

*Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)). An official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and the official "must also draw the inference." *Higgins v. Corr. Med. Servs. Of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).

Viewing all of the well-pleaded allegations in the complaint and construing all reasonable inferences in the light most favorable to Daniels, it is plausible that each of the defendants were subjectively aware of Daniels (i.e., that he was a risk of engaging in self-harm) and either knowingly or reckless disregarded it. Daniels alleges that he was given whole pills despite the need to receive "crushed pills" because of his history of overdosing. He alleges that Dr. Syerd and the officers knew of his history and did not care that he possessed whole pills.

Furthermore, Daniels alleges that defendants King, Jones, Elchek and other officers did not properly handcuff Daniels during the taking of his medication. Daniels explains that he would usually be handcuffed during the time he would take medication to prevent him from overdosing. Daniels states that the handcuffing procedure stopped and Daniels was allowed to store a large supply of pills. For these reasons, Daniels may proceed on his deliberate indifference to medical care claim against all defendants.

   2.   *Retaliation*

Daniels alleges that Dr. Syerd retaliated against him by taking away his crushed medication and instead administering whole pills. Daniels alleges that this was done in retaliation for overdosing on January 15, 2017.

Prison officials violate the Constitution when they act in retaliation of a prisoner conducting a protected right. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (internal

citations omitted). Even if the adverse action does not independently violate the Constitution, a prison official may still be liable if the plaintiff establishes "a chronology of events from which retaliation can be inferred." *Id.* (internal citation omitted).

Even liberally construing Daniels' complaint, it fails to state a claim of retaliation against Dr. Syerd or any other defendant. Daniels does not allege that he was engaging in a protected activity or that he suffered a deprivation likely to prevent future protected activities. Therefore, I will not allow Daniel to proceed on a retaliation claim against Dr. Syerd.

### 3. *Motion to Prevent Spoliation and Motion to for Protective Order*

Daniels filed two separate motions that both request the same relief: that the court order the defendants to not destroy any evidence. In the first motion, Daniels expresses concern that video footage will get destroyed (docket # 27), and in the second motion he seeks to ensure that staff disciplinary records are not purged (docket # 41). While Daniels mentions that disciplinary records can be purged after one year, he has not presented evidence that gives me reason to believe that an order is necessary. I am confident that the defendants are aware of their responsibilities under the Federal Rules of Civil Procedure to ensure relevant discoverable materials are not destroyed. I will deny Daniels' motions without prejudice. If circumstances change, Daniels may renew his motion.

### 4. *Motion to Appoint Counsel*

Daniels has requested that I recruit counsel to represent him in this case. (Docket # 34.) Courts have discretion to recruit counsel to represent a litigant who is unable to afford one in a civil case. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). Before a

court will do so, a litigant must make a reasonable attempt to secure private counsel on his own. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). Once a plaintiff demonstrates he has made a reasonable attempt to secure counsel on his own, the court examines "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 781 F.3d at 696 (citing *Pruitt*, 503 F.3d at 655). This inquiry focuses not only on a plaintiff's ability to try his case, but also includes other "tasks that normally attend litigation" such as "evidence gathering" and "preparing and responding to motions." *Id.*

I am satisfied that Daniels has made a reasonable attempt to secure counsel on his own. However, I will not grant his motion. Daniels' circumstances are not unique—most inmates who file civil cases have no legal training, limited education, and limited resources. Nearly all inmates ask the court to recruit counsel to represent them. As a result, the demand for *pro bono* attorneys is very high, but the supply of attorneys who have the time or ability to volunteer their time to represent inmates is low. I therefore must look closely at the issues in the case and the capacity of the particular plaintiff to determine whether recruitment of an attorney is necessary in his case. To date, Daniels' submissions have been clear and he has been able to request the relief he is seeking and articulate why he believes he is entitled to it. His own knowledge of his interactions with the defendants will be the most important part of his case, and he has been able to communicate what happened to him. I will deny his motion without prejudice.

5. *Motion for Emergency Relief*

Daniels has also filed a motion that he entitled a motion for emergency relief. (Docket # 39.) In it, Daniels details what recently happened at the prison and alleges, as he

8

did in his complaint, that he is not getting adequate mental health care. He asks for various forms of relief—namely that I grant his motion for appointment of counsel and his motion for a preliminary injunction and a temporary restraining order. He also asks that he be able to call in to provide me with more information.

Daniels has filed a lawsuit to address what he believes to be action, or inaction, on the part of prison staff that deprives him of his right to medical care. All of his claims must be in his complaint—a single document. Having allegations and claims spread over multiple documents is confusing for the court and the defendants, and it makes it likely that a plaintiff's claim might be overlooked. Additional facts that Daniels presents outside of the complaint will not serve as a basis for relief. He is already proceeding against the defendants on a claim of deliberate indifference. While he could add more instances of alleged deliberate indifference to his complaint, it will not provide him with more relief should he win this lawsuit. If Daniels feels these allegations should be included in the complaint, he should consult the Federal Rules of Civil Procedure, particularly Rules 15, 18, and 20, which discuss amending pleadings and when it is appropriate to join (that is, to have in the same lawsuit) claims and defendants. Continuing to file additional allegations outside of the complaint, and requesting relief that has already been requested, will only slow down the processing of the case.

6. *Motion for Preliminary Injunction and Temporary Restraining Order*

Finally, Daniels filed a motion for a preliminary injunction and temporary restraining order. (Docket # 28.) I am ordering the defendants to respond to this motion within **30 days** of this order. Once the defendants file a response, Daniels has **14 days** to file a reply.

**NOW, THEREFORE, IT IS ORDERED** that Daniels may proceed with his Eighth Amendment claims against all defendants. He may not proceed on a retaliation claim against Dr. Syerd.

**IT IS FURTHER ORDERED** that Daniels' motions to prevent spoliation (Docket # 27) and motion for protective order (Docket # 41) are **DENIED WITHOUT PREJUDICE**.

**IT IS ALSO ORDERED** that Daniels' motion for the appointment of counsel (Docket # 34) is **DENIED WITHOUT PREJUDICE**.

**IT IS ALSO ORDERED** that Daniels' motion for emergency relief (Docket # 39) is **DENIED**.

**IT IS ALSO ORDERED** that the defendants have **30 days** from the date of this order to file a response to Daniels' motion for a preliminary injunction and a protective order. Once the defendants respond, Daniels has **14 days** to file a reply.

**IT IS FURTHER ORDERED** that, under an informal service agreement between the Wisconsin Department of Justice and this court, the clerk's office electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Brian Foster, Sarah Cooper, Tony Meli, Nachy White, Chrystal Marchant, Carlyn M. Voigt, Anne York, CO Wood, CO Derter, CO Clerk, Dr. Syerd, Andrew Kesler, Dr. Torria M. Van Buren, and Dr. Steven J. Schmidt.

**IT IS FURTHER ORDERED** that, under an informal service agreement between the Wisconsin Department of Justice and this court, defendants Brian Foster, Sarah Cooper, Tony Meli, Nachy White, Chrystal Marchant, Carlyn M. Voigt, Anne York, CO Wood, CO Derter, CO Clerk, Dr. Syerd, Andrew Kesler, Dr. Torria M. Van Buren, and Dr. Steven

J. Schmidt file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $310.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Daniels is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, under the Prisoner E-Filing Program, Daniels shall submit all correspondence and case filings to institution staff, who will scan and email documents to the court. If plaintiff ceases to be incarcerated at a Prisoner E-Filing institution, he will be required to submit his objections to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises Daniels that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 3rd day of April, 2018 .

BY THE COURT

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge