UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

REMO HARRISON DANIELS,

                Plaintiff,

v.                                             Case No. 17-cv-680-pp

BRIAN FOSTER, *et al.*,

                Defendants.

---

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 69, 72, 74, 77, 97); DENYING AS MOOT PLAINTIFF'S MOTION TO PRODUCE (DKT. NO. 79); DENYING PLAINTIFF'S MOTION FOR CERTIFICATION (DKT. NO. 94); GRANTING PLAINTIFF'S MOTION FOR EXTENSTION OF TIME (DKT. NO. 100); AND CONSTRUING PLAINTIFF'S MOTION TO ALARM THE COURT (DKT. NO. 114) AS MOTION TO COMPEL AND ORDERING DEFENDANTS TO RESPOND BY END OF DAY FRIDAY, FEBRUARY 1, 2019**

---

        The plaintiff is an inmate at Green Bay Correctional Institution and is representing himself. The case is before the court on several motions to appoint counsel, dkt. nos. 69, 72, 74, 77, 97, a motion to produce, dkt. no. 79, a motion for certification, dkt. no. 94, and a motion for an extension of time, dkt. no. 100. The plaintiff also has filed a motion to notify the court of misconduct, dkt. no. 114, which the court construes as a motion to compel the defendants to produce video footage. The court will grant the plaintiff's motion for an extension of time, but it will deny the remaining motions except the motion to compel; it will require the defendants to respond to that motion by the end of the day on February 1, 2019.

1

## A.  MOTIONS TO APPOINT COUNSEL

Over the last four months, the plaintiff filed five motions asking the court to appoint counsel for him in this case and another case he has pending (case no. 17-cv-681). In a civil case, the court has the discretion to recruit counsel for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, the plaintiff must make reasonable efforts to hire counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007).

After the plaintiff demonstrates that he has made those efforts, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyering willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff asserts that he had contacted over twenty-three attorneys at the time he filed his first motion for the appointment of counsel. Dkt. Nos. 71, 71-1. The court is satisfied that the plaintiff has met the first Pruitt

requirement, and has demonstrated that he has tried to find an attorney on his own.

The court will not grant the plaintiff's motions, however, because it finds that the plaintiff can represent himself at this stage. Many of the issues the plaintiff has identified are issues faced by many incarcerated plaintiffs: a lack of legal training, limited access to legal materials, mental illness, a limited education and a lack of money to hire a lawyer. The court understands that those issues make it harder to pursue a lawsuit than it would be if the plaintiff had a lawyer. But based on the motions the plaintiff has filed, and the letters he has written, the court believes that the plaintiff is doing a pretty good job of representing himself. He has shown that he can clearly explain what happened to him that caused him to file his lawsuit, and what has happened so far in the lawsuit. While he has filed a lot of documents—probably more than someone who has a lawyer would file—the court has been able to understand every one of his filings. He presents logical arguments in support of his requests; even when the court does not agree with what he is asking for, it understands what he is asking for, and why. He has filed some fairly complex legal requests, such as motions for a preliminary injunction, to prevent spoliation, to impose sanctions and for a protective order.

In his motions to appoint counsel, the plaintiff says that the issues in his case are complex. In fact, his allegations are straightforward: he alleges that the defendants gave him medication in ways that deliberately ignored his

history of overdosing, and did not take action to prevent him from doing so. See Dkt. No. 45 at 3-4.

One of the issues about which the plaintiff raises concerns is the fact that summary judgment is difficult. He says that in other cases he's had, other judges appointed counsel to represent him earlier in his case. The court is not familiar with those cases, or why those judges may have made the decisions they did. But the court notes that at this point, both the defendants and the plaintiff have filed motions for summary judgment, and briefs. The court will rule on those motions in a separate order. If any of the plaintiff's claims survive summary judgment, the court will again consider his request for an attorney.

The plaintiff also has expressed concerns about the defendants refusing to give him documents he needs (he also has accused them of lying). The court will address that issue below.

Finally, the plaintiff has asked that if the court denies his motions to appoint counsel, it understands that he is doing the best he can, given the challenges he faces. The court has no doubt that the defendant is trying as hard as he can to represent himself to the best of his ability in these cases.

The court denies the motions to appoint counsel without prejudice.

**B.     MOTION TO PRODUCE**

The deadline for the parties to finish exchanging discovery was October 17, 2018. Dkt. No. 68. A month after that deadline, the plaintiff filed a motion asking for video footage that he believes is important for his case. Dkt. No. 79. He asked in the motion, "[p]lease [produce] this video footage to the court as

4

soon as possible to support [summary judgment]." Id. at 2. The court construes this motion as a motion to compel the defendants to produce the video footage. Civil Local Rule 37 requires that before a party files a motion to compel the other side to do something, he must confer with the other side and try to work things out without involving the court. Incarcerated plaintiffs can do this by writing a letter to the lawyer for the defendants. The plaintiff did not indicate that he'd tried to work things out with the defendants before filing this motion.

On January 7, 2019, however, the court received a document from the plaintiff titled "Motion to Alarm the Court's." Dkt. No. 114. That motion says that the plaintiff had written to the court and informed it that the defendants were "trying to hold evidence," and that the court told him to try to work it out with them. Id. at 1. (It is true that quite some time ago, the plaintiff filed a motion to prevent spoliation, indicating that he was worried that the defendants were going to destroy some video footage, dkt. no. 27; Judge Joseph told the plaintiff that she was quite sure that the defendants were aware of their obligations to preserve evidence, dkt. no. 45.) The plaintiff says that this court told him to try to work things out with the defendants, and that he tried. Dkt. No. 114 at 1. The plaintiff says that he asked the defendants for video footage from various dates, but that they told him they didn't have footage for many of those dates. Id. The plaintiff does not believe the defendants. He says that they turned footage over to him in another case—Daniels v. Beahm, 17-cv-1080-pp—and wonders why, if they could provide the footage to him in that

case, they could not provide it to him in this one. Id. at 2. He asks this court to review "Exhibit 1000" in connection with this argument. Id.

Since May 2015, the plaintiff has filed nine cases in this district. Currently, he has three open cases—this one, Daniels v. de Blanc, *et al.*, 17-cv-681, and Daniels v. Beahm, *et al.*, 17-cv-1080. While all three cases are assigned to this court, the court is not able to recall every exhibit filed in each case or every document filed in each case. The court does not know which of these cases contains Exhibit 1000, or what it is.

In the interest of trying to resolve this issue, the court is going to deny the plaintiff's November 2018 motion to produce as mooted by this January 2019 motion to compel. It is going to order the defendants to respond to the January 2019 motion to compel by the end of the day on Friday, February 1, 2019.

## C. MOTION FOR CERTIFICATION (DKT. NO. 94) AND MOTION FOR EXTENSION OF TIME (DKT. NO. 100)

On December 3, 2018, the court received from the plaintiff filed a motion for "certification," asking whether the defendants had filed a motion for summary judgment. Dkt. No. 94. The court received this motion fifteen days after the defendants filed their motion for summary judgment, and the court notes that there was a holiday during that time (Thanksgiving) on which there was no mail delivery. The same day the court received the plaintiff's motion, it received a response from the defendants, noting that they'd filed their summary judgment motion on November 19, 2018, and indicating that as a courtesy they were sending the plaintiff another copy. Dkt. No. 96. The next day, the court

6

received a motion from the plaintiff, asking for additional time to respond to the defendants' summary judgment motion. Dkt. No. 100. (The court since has received his response, dkt. no. 102, along with his proposed findings of fact and declarations, dkt. nos. 103-106.)

The court will deny the plaintiff's motion for certification, because the defendants have addressed his concerns. The court will grant his motion for an extension of time to respond, *nunc pro tunc* (going back to) December 19, 2018, which is the date the court received his response.

**D.  CONCLUSION**

The court **DENIES without prejudice** the plaintiff's motions to appoint counsel. Dkt. Nos. 69, 72, 74, 77, 97.

The court **DENIES AS MOOT** the plaintiff's motion to produce. Dkt. No. 79.

The court **DENIES** the plaintiff's motion for certification. Dkt. No. 94.

The court **GRANTS** the plaintiff's motion for an extension of time to respond, *nunc pro tunc* to December 19, 2018; the court **ORDERS** that the plaintiff's response to the defendants' motion for summary judgment was timely filed. Dkt. No. 100.

The court **ORDERS** that by the end of the day on February 1, 2019, the defendants shall respond to the plaintiff's motion to compel. Dkt. No. 114.

Dated in Milwaukee, Wisconsin, this 14th day of January, 2019

                                          **BY THE COURT:**

                                          **HON. PAMELA PEPPER**
                                          **United States District Judge**